UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------- x

UNITED STATES OF AMERICA

        - v. -                                10 Cr. 1217 (KMW)
                                                  **OPINION & ORDER**

PETER GHAVAMI, GARY HEINZ, and
MICHAEL WELTY

                Defendants.

------------------------------- x
KIMBA M. WOOD, U.S.D.J.:

The following motions were made orally during trial: (1) Defendants Ghavami and Welty's renewed motions to sever Count Six; (2) Ghavami's motion for a mistrial; and (3) Defendant Heinz's motion to strike certain witness testimony on the ground that it caused an impermissible variance from the Superseding Indictment. The Court denied the first two motions orally and has not yet ruled on the third. This opinion serves as a comprehensive explanation of the reasons underlying the Court's decisions with respect to the first two motions, and represents the Court's ruling on the third.

**I. DEFENDANTS GHAVAMI AND WELTY'S RENEWED MOTIONS TO SEVER COUNT SIX**

Count Six of the Superseding Indictment charges only Heinz with witness tampering in violation of 18 U.S.C. § 1512(b)(l) and (3), based on statements he made at a lunch on November 24, 2006, after the Department of Justice's investigation into allegations of bid-rigging in the municipal bond industry had begun. On July 13, 2012, the Court denied Ghavami and Welty's pre-trial motions to sever Count Six, finding that the risk of unfair prejudice by joinder of the witness tampering count was insufficiently severe to overcome the strong presumption against severance. (Dkt. No. 211.)

1

At trial, the Government sought to introduce evidence of a statement made by Heinz at the lunch that he was contemplating removing or destroying certain notebooks that he kept at home. Heinz moved to exclude evidence of the statement on the ground that its admission would be unfairly prejudicial and would unduly confuse the jury because it was not evidence of witness tampering, but rather related to obstruction of justice, with which Heinz is not charged. (Trial Tr. 321-23, July 31, 2012.) At that time, Ghavami and Welty also orally renewed their motions to sever Count Six on the ground that admission of the statement would unfairly associate them with Heinz's alleged witness tampering. (*Id.* at 324.) On July 26, 2012, the Court denied the motions and ruled that the statement was admissible as evidence of Heinz's knowledge of wrongdoing. Heinz's statement regarding the notebooks was subsequently admitted during the testimony of cooperating witness Mark Zaino. (Trial Tr. 1271-72, Aug. 6, 2012.)

Pursuant to Federal Rule of Criminal Procedure 14 ("Rule 14"), the Court has discretion to sever properly joined charges where joinder would result in undue prejudice to a defendant. Fed. R. Crim. P. 14(a); *see also United States v. Rittweger*, 524 F.3d 171, 179 (2d Cir. 2008). However, "for reasons of economy, convenience and avoidance of delay, there is a preference in the federal system for providing defendants who are indicted together with joint trials." *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003). "Acknowledged in this policy is the inevitable tolerance of some slight prejudice to codefendants, which is deemed outweighed by the judicial economies resulting from the avoidance of duplicative trials." *United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir. 1991). Therefore, severance should be granted "only if there is a serious risk that a joint trial would compromise a specific right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). "Such a risk might occur when evidence that

the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Id.* However, "the fact that evidence may be admissible against one defendant but not another does not necessarily require a severance." *United States v. Carson*, 702 F.2d 351, 367 (2d Cir. 1983). Even in cases where there is a high risk of prejudice, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539. Indeed, "limiting instructions to the jury have emerged as the preferred device for curing any prejudicial spillover that may result from a multi-defendant, multi-count trial." *United States v. Santiago*, 174 F. Supp. 2d 16, 22 (S.D.N.Y. 2001) (Marrero, J.)

To the extent that certain of Heinz's statements, including his statement regarding his notebooks, relate only to Count Six, the Court instructed the jury that it could not consider that evidence against either Ghavami or Welty as to Count Six, because neither of them is charged in that count. (Trial Tr. 1263, 1292, Aug. 6, 2012.) The Court reiterated this in its charge to the jury at the close of trial when it instructed the jury that (1) it could not consider any evidence of the lunch against Ghavami, and (2) that Welty was not charged with the crime alleged in Count Six. (Trial Tr. 4776-77.) The Court also gave a more general instruction that the jury must consider the evidence against each defendant individually for each count. As the Court noted in its earlier denial of the same motion in its Opinion & Order dated July 13, 2012, there is no reason to abandon the presumption that a jury will abide by the instructions provided to it. *United States v. Ghavami*, No. 10 Cr. 1217, 2012 WL 2878126, at *15 (S.D.N.Y. July 13, 2012) (citing *Zafiro*, 506 U.S. at 540-41). Accordingly, the Court denied Ghavami and Welty's renewed severance motions.

## II. DEFENDANT GHAVAMI'S MOTION FOR A MISTRIAL

The charges that are contained in the Superseding Indictment relate only to Defendants' conduct when they were employed at UBS. During the trial, the Government elicited testimony from a cooperating witness, Alexander Wright ("Wright"), about his interactions with Ghavami and Heinz when the three individuals worked together at JP Morgan in the late 1990s, prior to Ghavami and Heinz's departure for UBS. The testimony focused primarily on Ghavami and Heinz's relationships with brokers, particularly CDR. Wright testified, *inter alia*, that, CDR and JP Morgan had an understanding with CDR that CDR would give preferential treatment to JP Morgan on certain transactions. (Trial Tr. 1913-15.)

Prior to the admission of the testimony, Ghavami and Heinz moved to exclude it on the ground that it was improper propensity evidence in violation of Rule 404(b). Rule 404(b) provides, in relevant part: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). Ghavami and Heinz argued that evidence of their relationship and conduct with CDR while they were employed at JP Morgan was being offered to prove that they acted similarly once they were working at UBS, and that it should therefore be excluded as improper.

The Court denied the motion, on the ground that the evidence did not violate Rule 404(b) "because it was being offered not to show that Defendants Ghavami and Heinz had a propensity to commit the crimes with which they were charged, but rather to explain the development of the relationship between brokers at CDR, on the one hand, and defendants Ghavami and Heinz on

the other, as well as the mutual trust that existed among them, the alleged ease and speed with which they entered into the allegedly illegal agreements at issue in the indictment and understood one another's allegedly coded conspiratorial remarks." (Trial Tr. 712-13.)

Once the evidence was admitted pursuant to the Court's ruling, Ghavami moved for a mistrial based on the submission of that evidence. (Trial Tr. 2183.) A party moving for a mistrial bears the high burden of demonstrating a "manifest necessity" for discharging the jury. *Arizona v. Washington*, 434 U.S. 497, 505 (1978). The classic formulation of the test was first articulated by Justice Story in *United States v. Perez*, 9 Wheat. 579, 580 (1824). As he stated:

> "[T]he law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it improper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.

Whether a particular set of circumstances rises to the level of creating a "manifest necessity" for a mistrial is fact dependent. Where the jury's impartiality may be affected and the trial court believes that limiting instructions (or more severe action, such as disciplining counsel or removing him from trial) will not sufficiently remove the risk of bias, the court may properly declare a mistrial. *See Arizona v. Washington*, 434 U.S. at 512-13. However, limiting instructions are often sufficient to mitigate this risk such that a mistrial is not manifestly necessary.

During trial, the Court stated that, "with the proper limiting instruction, the jury will make the correct use of this evidence, which I think is evidence of the background of the conspiracy." (Trial Tr. 3018.) The Court asked counsel for both parties to propose a limiting

5

instruction to be used when testimony was given concerning Ghavami and Heinz's conduct during their employment at JP Morgan. The Court adopted the version proposed by the defense, which read:

> You have heard testimony concerning Messrs. Ghavami and Heinz's employment at J.P. Morgan. Their work at J.P. Morgan is not charged in this case. Mr. Ghavami and Heinz are not charged with any wrongdoing while at J.P. Morgan. The testimony is to be considered by you only as background of the relationships that you have heard about in this case. It would be improper for you to consider uncharged conduct as evidence of the charges in the indictment.

(Trial Tr. 3021.) That instruction, or a close variation of it, was read to the jury several times throughout the trial. (*See, e.g.*, Trial Tr. 3025 (during the testimony of Doug Goldberg), 3227 (during the testimony of David Rubin).) Moreover, at the conclusion of the trial, the jury was again instructed as to the proper use of the evidence. They received the following instruction both orally and in writing:

> There has been evidence received during the trial that GHAVAMI and HEINZ engaged in conduct while employed at JP Morgan Chase that the Government contends was similar in nature to the conduct charged in the Indictment but which is not charged as a crime in this case. Let me remind you that the defendants are only on trial for committing the acts alleged in the Indictment.
>
> Accordingly, you may not consider this evidence of similar acts as a substitute for proof that a defendant committed the crimes charged. Nor may you consider this evidence as proof that a defendant has a criminal personality or a bad character. This evidence was admitted for a limited purpose only – that is, to the extent that you find it explains the background to the relationship between brokers at CDR on the one hand, and GHAVAMI and HEINZ on the other, for example, whether or not mutual trust existed among them, and whether or not they entered into the relationships with ease and speed and understood one another's remarks. You may consider the evidence for that purpose only.
>
> (Trial Tr. 4782-83.)

The Court believes that these instructions sufficiently removed the risk of any bias or improper use of the evidence concerning Ghavami and Heinz's conduct while employed at JP Morgan.

## .III. DEFENDANT HEINZ'S MOTION TO STRIKE WITNESS TESTIMONY

Heinz seeks to strike testimony given by cooperating witness Wright regarding two recorded conversations between Heinz and Wright while Heinz was employed at UBS, and Wright was employed at JP Morgan, concerning a deal related to the City of Detroit ("Detroit deal"), on the ground that the admission of the recordings in support of Count One results in an impermissible variance from the count as written in the Indictment. (Trial Tr. 1978.) Heinz contends that the tapes result in a variance because they refer to allegedly collusive statements and conduct of Chris Winters ("Winters"), the broker for the deal, when the basis for Count One, as alleged in the Indictment, is "horizontal," or provider-to-provider collusion, as opposed to "vertical" or broker-to-provider collusion. The Government argues that the statements are admissible because they are statements made by Heinz.

The tapes, admitted into evidence as Government Exhibits 524707 and 524740, record two conversations between Heinz and Wright in which Heinz, using purportedly coded language, allegedly tells Wright that he wants to win the Detroit deal and asks Wright to put in an intentionally losing bid to the broker, Chris Winters. In Government Exhibit 524707, Heinz states that the Detroit deal is "a reinvest deal that we're very axed for," which Wright testified he understood to mean that the Detroit deal was "a deal that [Heinz] want[ed] to win very badly." (Trial Tr. 1962, Aug. 9, 2012.) Heinz advises Wright that Wright will "be seeing [the deal] probably through Winters," which Wright testified he understood to mean "that the bid would come to [Wright] from Winters & Co. and furthermore Winters & Co. [was] endeavoring to fill

7

out the bid group to include three disinterested bidders and UBS." (*Id.*) Heinz tells Wright, "I told [Winters] you'd probably put a number on it," which Wright testified he understood to mean "that [Wright was] supposed to put in an intentionally losing bid on this transaction." (*Id.*) In Government Exhibit 524740, Heinz tells Wright that "Chris will talk to you about where the market is," which Wright testified he understood to mean that "Chris Winters will tell [Wright] what number to bid so that I'll have a comfortably losing bid." (*Id.* at 1964.)

To the extent that Heinz asserts that his statements are inadmissible because they contain embedded hearsay, the statements are not hearsay because they are not being offered for the truth of the matters asserted therein. Rather, they are being offered for any effect they may have had on Wright. The statements are evidence of horizontal collusion between Heinz and Wright in their capacity as representatives of providers UBS and JP Morgan, respectively, whether or not Winters actually served as the conduit through whom Wright obtained the specific bid level that would result in JP Morgan losing the bid. Accordingly, the recordings and Wright's accompanying testimony were properly admitted into evidence.

SO ORDERED.

Dated: New York, New York
~~September~~ October 1, 2012

KMW

/s/ Kimba M. Wood
Kimba M. Wood
United States District Judge

8